UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RONALD NELSON,

                                        Petitioner,

                                                                    DECISION AND ORDER

                                                                    21-CV-6470L

                            v.

LYNN LILLEY, Superintendent, Eastern New York
Correctional Facility,

                                        Respondent.

_____

## INTRODUCTION

Petitioner Ronald Nelson, a prisoner in respondent's custody, has filed a *pro se* petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. # 1). For the reasons that follow, the

petition is dismissed.

## BACKGROUND

### A.  State Court Proceedings

On August 26, 2014, a Monroe County grand jury indicted Nelson and co-defendants

Vincent Bean and Deiondre Francis in connection with the death of Travone Teasley on charges

of Manslaughter in the First Degree (New York Penal Law §§ 20.00, 125.20[1]) and Gang Assault

in the First Degree (P.L. §§ 20.00, 120.07). Bean also was charged with Murder in the Second

Degree (P.L. § 125.25[1]) against the same victim.

The charges stemmed from an assault that occurred on June 20, 2014, in the City of Rochester. The indictment alleged that while Nelson kicked Teasley in the face as he lay on the ground, Bean fatally stabbed Teasley with a knife he had borrowed from Nelson minutes before the attack. Francis pleaded guilty to reduced charges of second-degree manslaughter and second-degree gang assault in exchange for his cooperation against Nelson and Bean.

Nelson and Bean were tried jointly in New York State Supreme Court, Monroe County (Affronti, J.) ("trial court") from May 7, to May 19, 2015. Neither Nelson nor Bean testified. The prosecution presented numerous witnesses along with video footage from surveillance cameras located on two stores near the crime scene. Set forth below is a summary of the testimony relevant to disposing of the instant petition.

At the beginning of 2014, eyewitness Lawrence Baker heard from a friend that he (the friend) had been beaten up by co-defendant Francis. In retaliation, Baker and his brother sought out Francis and beat him up for allegedly attacking Baker's friend. (T: 716-17).[1]

Several weeks later, on the night of June 20, 2014, Nelson, Francis, and Bean were hanging out and drinking with their friend Teana Hannah at the corner of Genesee Street and Kirkland Road. (T: 717-18). At around 9:30 p.m., Francis went to a nearby convenience store where he saw Baker, who was with Teasley. (T: 718-19). Francis knew Teasley by his nickname, "Boo-Boo." (T: 720). Francis testified that Boo-Boo was not involved in the incident where Baker and his friends jumped him (Francis).

---

[1] Citations to "T:__" refer to the original page numbers of the trial transcript, filed by Respondent in connection with his response to the petition. (*See* Dkt. # 19).

Francis overheard Baker say to Teasley that Francis was "[t]hat boy that we jump[ed]" a couple weeks ago. (T: 719). Francis immediately left the store and went to find Nelson. Francis told him that he had just seen the man who had beaten him up, describing him as "[t]he one with no shirt on," i.e., Baker. (T: 720). Francis and Nelson ran back toward the store and, on the way, met up with Bean. When Bean asked Francis and Nelson what was going on, they said, "Let's go fight." (T: 721). When Bean asked who they were fighting, Francis replied, "Boy with no shirt on, Larry [Baker]." (T:721). Before Bean, Francis, and Nelson headed back to the store to confront Baker and Teasley, Hannah saw Nelson give Bean a small, silver, folding knife so that Bean would not be "empty handed." (T: 905-06, 930, 936, 975-76). Francis also testified that Bean had a knife before the fight, but he said he saw Bean with it earlier in the evening, around 5 p.m. (T: 731-32).

As Bean, Francis, and Nelson approached Baker and Teasley, Bean was in the lead, followed by Nelson and Francis. Bean asked Baker what he did to his (Bean's) cousin, and Baker denied doing anything. Francis accused Baker of lying and "that's when [Bean] popped on [Baker]," that is, hit him. (T: 723). At that point, everyone scattered. Baker ran across the street and got hit by a car. (T: 513-14). After he stood up, Baker saw Bean, who had run into the street, pull out a knife. (T: 515). Nytecia Griffin and Zhaviair Cuyler, who were friends with Baker and Teasley, also heard Teasley say, in reference to Bean, "He's got a knife." (T: 664-66).

Francis stated that he pursued Teasley towards a church opposite the convenience store. As Francis and Teasley squared up and got ready to fight, Bean came up and hit Teasley, causing him to fall into some bushes next to the church. (T: 724). Baker heard Bean yelling at Teasley, "You jumped my brother!" (T: 516). Nelson joined in the fray and was kicking Teasley in the face while Bean was punching Teasley repeatedly. (T: 724-25, 749-50 756). Hannah, who was watching the fight from a short distance away, saw Bean punching Teasley. She related that

3

Teasley was holding onto the side of his body, trying to get away, and saying that "he didn't do it, it wasn't him." (T: 913). Hannah saw blood on the side of the body that Teasley was holding. (T: 913).

Francis said he punched Teasley once but backed off because he saw blood on Teasley's chest and neck. (T: 724, 750). At that point, Francis testified, everybody also backed off. Teasley got up and ran down Kirkland towards Judson, stumbling and falling as he went. Nelson, Bean, and Francis ran in the same direction.

Teasley collapsed on Judson and did not move again. Francis, Bean, and Nelson kept walking and went to Francis's sister's house on Warwick. (T: 732). Hannah was walking with them. As they walked, Bean was wiping the blood off the knife with his shirt; he then tossed the knife into a gutter around Wellington. (T: 734-36). Francis and Hannah testified that Nelson asked Bean why he stabbed Teasley, saying that that he had not given him the knife for that purpose. (T: 823-24; 917-18).

The medical examiner, Dr. Caroline Dignan, testified that Teasley died as a result of significant injuries to his heart and lungs, caused by two stab wounds—one to his left neck and one to his chest. Either of the two stab wounds alone would have been fatal. (T: 1078-79). Teasley also sustained a non-fatal stab wound to the leg and numerous abrasions.

On May 19, 2015, the jury returned a verdict convicting Bean of all charges and convicting Nelson of first-degree gang assault while acquitting him of first-degree manslaughter. On June 16, 2015, Nelson was sentenced as a second felony offender to a 15-year determinate term of imprisonment plus five years of post-release supervision ("PRS").

Represented by new counsel, Nelson filed an appellate brief asserting, among other claims, that the evidence was legally insufficient to support the first-degree gang assault conviction. In particular, Nelson challenged the following two elements of first-degree gang assault—intent to cause serious physical injury to the victim and causation of serious physical injury to the victim. The Appellate Division agreed that the People had failed to prove that Nelson's kick to Teasley's face caused "serious physical injury," because "[t]he medical evidence admitted at trial established that the victim did not sustain any injuries to his head or face and that the only serious physical injuries sustained by the victim were the fatal stab wounds caused by the codefendant[, Bean]." *People v. Nelson,* 178 A.D.3d 1395, 1396, 116 N.Y.S.3d 826, 827 (4th Dept. 2019). Thus, it concluded, Nelson could not be found guilty as a principal on the first-degree gang assault charge. *Id.*

With respect to accessorial liability under P.L. § 20.00, the Appellate Division found that there was "no dispute" that codefendant Bean's actions proved beyond a reasonable doubt his intent cause serious physical injury to the victim; however, the evidence was "legally insufficient to establish that [Nelson] shared the codefendant's intent to cause serious physical injury to the victim," *Nelson*, 178 A.D.3d. at 1396 (citation omitted). The Appellate Division "nevertheless conclude[d] that the evidence is legally sufficient to establish the lesser included offense of gang assault in the second degree under a theory of accomplice liability (Penal Law §§ 20.00, 120.06)," *id.* at 1396-97. The Appellate Division accordingly vacated the first-degree gang assault sentence and remanded for resentencing. Leave to appeal was denied by the New York Court of Appeals. *People v. Nelson*, 35 N.Y.3d 972 (2020).

At resentencing on July 21, 2020, the trial court imposed the same 15-year sentence on the second-degree gang assault conviction based on an accessorial theory of liability. Nelson appealed,

5

arguing that the conviction should be further reduced to third-degree assault and that the re-sentence was unduly harsh and severe. The Appellate Division declined to further reduce the conviction, noting that "a defendant who appeals from a resentence only may not challenge the underlying judgment of conviction." *People v. Nelson*, 195 A.D.3d 1442, 1443, 145 N.Y.S.3d 500 (4th Dept. 2021) (citing *People v. Jordan*, 16 N.Y.3d 845, 846 (2011) ("The Appellate Division correctly held that defendant could not challenge his plea on appeal from a resentencing proceeding. [N.Y. Crim. Proc. Law §] 450.30(3) provides that 'when a resentence occurs more than thirty days after the original sentence, a defendant who has not previously filed a notice of appeal from the judgment may not appeal from the judgment, but only from the resentence.' An appeal such as this one seeking immediate relief from an underlying judgment of conviction is not one 'only from the resentence.'"); other citations omitted). However, the Appellate Division exercised its discretion to reduce Nelson's sentence to 12 years' determinate plus five years' PRS.

While the original direct appeal was still pending, Nelson filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 on January 12, 2018. Among other claims, Nelson argued that he was actually innocent and that the evidence against him was legally insufficient to support the first-degree gang assault conviction. On January 2, 2019, New York State, Monroe County Court (Sinclair, J.), denied the motion, finding that the actual innocence and legal insufficiency of the evidence claims could be resolved on the basis of the record available on his then-pending initial direct appeal. Consequently, they were procedurally barred by C.P.L. § 440.10(2)(b), which provides in pertinent part that a court "must deny a motion to vacate a judgment when . . . [t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal. . . ."

The remaining claims in the C.P.L. § 440.10 motion were denied as meritless. The Appellate Division denied leave to appeal on April 19, 2019.

### B.  Federal Habeas Petition

The timely filed petition asserts one ground for relief—that the evidence was legally insufficient to support a conviction for second-degree gang assault under an accomplice theory of liability. Respondent answered the petition and filed a memorandum of law in opposition along with the state court records and transcripts. Respondent argues that the Appellate Division's rejection of the legal insufficiency claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

### DISCUSSION

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011) ("*Richter*"). AEDPA "revised the conditions under which federal courts may grant habeas relief to a person in state custody." *Kruelski v. Connecticut Superior Ct. for Jud. Dist. of Danbury*, 316 F.3d 103, 106 (2d Cir. 2003). Now, under 28 U.S.C. § 2254(d), a federal court "shall not . . . grant[ ]" an application for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)." *Richter*, 562 U.S. at 98. Therefore, I first must determine if Nelson's insufficiency of the evidence claim was "adjudicated on the merits" by any state court.

As the Supreme Court has pointed out, AEDPA itself does not require a statement of reasons; it "refers only to a 'decision,' which resulted from an 'adjudication.'" *Richter*, 562 U.S. at 98. "[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.*

This case is somewhat atypical because the conviction Nelson challenges was the result of the Appellate Division's modification of the original conviction on his first direct appeal. Nonetheless, the Court finds that the Appellate Division adjudicated the merits of the legal insufficiency claim as part and parcel of its reduction of the first-degree gang assault conviction to a conviction for accessorial second-degree gang assault. To make this ruling, the Appellate Division necessarily concluded that, based on the trial record, there was legally sufficient evidence on which to find Nelson guilty of second-degree gang assault as an accessory, without violating his Fourteenth Amendment right to due process.

Because there has been an "adjudication on the merits," the Court views Nelson's legal insufficiency claim through the lens of § 2254(d). The question it must answer is whether the Appellate Division's was an unreasonable application of the Supreme Court's clearly established precedent set forth in *Jackson v. Virginia*, 443 U.S. 307, 315 (1979), [2] which held that the Due

---

[2]  New York State case law makes clear that its "legally sufficient evidence" standard is identical to the federal constitutional due process right discussed in *Jackson*. *See, e.g., People v. Contes*, 60 N.Y.2d 620, 621 (1983) ("The standard for reviewing the legal sufficiency of evidence in a criminal case is whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." And because the Appellate Division acted as the factfinder in this case, the Court must ask whether its imposition of the second-degree gang assault conviction under an accessorial theory of liability resulted from an unreasonable determination of the facts in the light of the evidence presented, *see* § 2254(d)(2).

When assessing whether the evidentiary support for a conviction satisfies due process, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–19 (citations omitted; emphasis in original); *accord McDaniel v. Brown*, 558 U.S. 120, 132 (2010) (*per curiam*). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel*, 558 U.S. at 133 (quoting *Jackson*, 443 U.S. at 326); citation omitted). Thus, when evaluating a sufficiency of the evidence claim, the reviewing court is not permitted to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996).

*Jackson*'s legal insufficiency "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." 443 U.S. at 324 n.16. Under P.L. § 120.06, "[a] person is guilty of gang assault in the second degree when, with *intent to cause*

_____

crime beyond a reasonable doubt[.]'") (quoting *Jackson*, 443 U.S. at 319). Therefore, the Appellate Division's finding that there was legally sufficient evidence to support Nelson's conviction could not have been "contrary to" clearly established Supreme Court precedent.

*physical injury* to another person and when aided by two or more other persons actually present, he *causes serious physical injury* to such person or to a third person." N.Y. Penal Law § 120.06 (McKinney) (emphases supplied). New York's accessorial liability statute provides that a person is liable for another person's conduct constituting a criminal offense when, "acting with the mental culpability required for the commission [of the criminal offense], he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00 (McKinney). P.L. § 20.00 "requires that the accomplice act with the mental culpability required for the commission of the underlying crime," and thus "an accomplice must have a shared intent, or 'community of purpose' with the principal." *People v. Carpenter*, 30 N.Y.S.3d 299, 301 (2d Dept. 2016) (quoting *People v. Cabey*, 85 N.Y.2d 417, 421 (1995); citations omitted). P.L. § 20.00 also "includes an *actus reus* component," namely, that "'the accomplice must have intentionally aided the principal in bringing forth a result.'" *Id.* (quoting *People v. Kaplan*, 76 N.Y.2d 140, 146 (1990) (emphasis omitted in original)).

Pointing to the Appellate Division's reversal of the first-degree gang assault conviction based on legally insufficient evidence of intent to cause *serious* physical injury, Nelson reasons that this precluded a finding that there was legally sufficient evidence to support a conviction for second-degree assault as an accessory. However, the *mens rea* for second-degree gang assault is not the same as the *mens rea* for first-degree gang assault. Instead, to have the culpable mental state for second-degree gang assault, the defendant only need intend to cause physical injury, even if non-serious. *See People v. Sanchez*, 866 N.Y.S.2d 78, 81 n.1 (1st Dept. 2008). Indeed, as Respondent notes, Nelson concedes there was "ample trial evidence" establishing that he "acted with the lesser *mens rea* element required for gang assault in the second degree (an intent to cause physical injury)." (Dkt. # 1-1 at 14-15).

Nelson also contends that the prosecution "failed to prove the *actus reus* element required for holding someone criminally liable as an accessory for gang assault in the second degree." (Dkt. # 1-1 at 15). The *actus reus* of the substantive crime here is "caus[ing] serious physical injury," N.Y. Penal Law § 120.06.[3] Applying the overlay of P.L. § 20.00's *actus reus* component, the prosecution in this case was required to prove beyond a reasonable doubt that Nelson "intentionally aided[4] the principal in bringing forth a result," *Kaplan*, 76 N.Y.2d at 146, i.e., "caus[ing] serious physical injury," P.L. § 120.06.

Nelson first asserts that accessorial liability under P.L. § 20.00 for second-degree gang assault "will not attach unless the non-principal acts with a specific goal in mind: causation of serious physical injury to a victim." (Dkt. # 1-1 at 15). According to Nelson, he was "surprised and dismayed" by the fact that Bean stabbed Teasley (*Id.* at 15-16), as "proved" by "the undisputed testimony of two prosecution witnesses," Francis and Hannah. (*Id.* at 17). It is true that Francis and Hannah testified that, during their walk home after the incident, Nelson told them he did not expect Bean to use the knife. However, the fact that inferences favorable to Nelson's defense could be drawn from the evidence is immaterial because "the task of choosing among competing inferences is for the [factfinder], not a reviewing court." *United States v. Salmonese*, 352 F.3d 608, 618 (2d Cir. 2003) (internal quotation marks omitted). Thus, insofar as the record contains evidence from which the [factfinder] could have drawn an inference favorable to the defense, but did not, the reviewing court must "defer to . . . the [factfinder]'s choice of the competing

---

[3]  There is no question that Teasley suffered "serious physical injury." *See* N.Y. Penal Law §10.00 (defining serious physical injury as physical injury which, *inter alia*, creates a substantial risk of death, or which causes death).

[4]  Nelson observes that the "the record contains not a scintilla of evidence demonstrating that [he] solicited, requested, commanded or importuned codefendant Bean to do anything at all, much less to stab the victim with a knife." Nelson is correct that the prosecution did not introduce evidence that Nelson verbally solicited, requested, commanded, or importuned Bean to seriously injure Teasley. Thus, the prosecution's theory of accomplice liability is based on the "intentionally aids" clause of P.L. § 20.00.

inferences." *United States v. Kinney*, 211 F.3d 13, 18 (2d Cir. 2000) (quoting *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998)); *see also Tucker v. Yelich*, 16-CV-4931 (JFB), 2017 WL 3669613, at *10 (E.D.N.Y Aug. 24, 2017) (evidence sufficient to permit inference that habeas petitioner had culpable state of mind despite his sworn denial, as jury was entitled to believe only those parts of his testimony that inculpated him and disbelieve all exculpatory testimony); *United States v. Perrone*, S2 05 CR. 774 KMW, 2007 WL 43998, at *2 (S.D.N.Y. Jan. 4, 2007) (evidence sufficient despite aspects of government's case favorable to the defense, as jury was entitled to disregard that evidence).

In any event, "direct proof of an express agreement or statement between" Nelson and his codefendants "is not required to show that [he] acted either as a principal or an accessory to a crime." *Martinez v. Breslin*, No. 07 CIV. 8671 (DC), 2009 WL 2244633, at *6 (S.D.N.Y. July 28, 2009) (citing *Jones v. Keane*, 250 F. Supp. 2d 217, 238 (W.D.N.Y. 2002); *People v. Alvarez*, 389 N.Y.S.2d 980, 987 (Sup. Ct. 1976)). Thus, Nelson's subjective expectation that Bean would not use the knife Nelson gave him is not relevant to whether he intentionally aided Bean in causing serious physical injury to Teasley.

Nelson also contends that "while [his] single kick may have inadvertently aided the codefendant's conduct, it was not intentional aid[.]" (Dkt. # 1-1 at 16 (citing N.Y. Penal Law § 15.05[1] ("A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result *or* to engage in such conduct.")). In other words, Nelson's position is that when he kicked the victim, he did not have the conscious objective of causing the ensuing result—the victim sustaining serious physical injuries. Therefore, he concludes, he did not intentionally aid Bean in causing serious physical injury to the victim.

Though Nelson's argument has some surface appeal, it does not find support in New York case law. To frame this discussion, it bears repeating the well-established principle that a determination of state law by a state intermediate appellate court binds a federal habeas court. *See*, *e.g.*, *Hicks v. Feiock*, 485 U.S. 624, 629-30 (1988) ("We are not at liberty to depart from the state appellate court's resolution of these issues of state law. Although petitioner marshals a number of sources in support of the contention that the state appellate court misapplied state law on these two points, the California Supreme Court denied review of this case, and we are not free in this situation to overturn the state court's conclusions of state law.") (footnote omitted); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

To be guilty of second-degree gang assault as a principal in New York, a person need not have the *mens rea* of intent to cause *serious* physical injury. *See* N.Y. Penal Law § 120.06. The serious physical injury is the *actus reus* of the offense; Nelson's arguments, to some degree, elide the two components. "As explained by the New York Court of Appeals, '[New York] Penal Law § 20.00 imposes accessorial liability on an accomplice not for aiding or encouraging another to reach a particular mental state, but rather for intentionally aiding another to engage in *conduct* which constitutes the charged offense while himself "acting with the mental culpability required for the commission" of that offense.'" *Howard v. McGinnis*, 632 F. Supp. 2d 253, 277 (W.D.N.Y. 2009) (quoting *People v. Flayhart*, 72 N.Y.2d 737, 741 (1988) (emphasis in original)). In other words, Section 20.00 pertains to the *actus reus* component of the offense, rather than the *mens rea* component. *See id.* The question is thus whether Nelson's actions intentionally aided Bean to engage in the conduct prescribed by the statute—seriously injuring Teasley.

Viewing the evidence in the light most favorable to the prosecution, and drawing all reasonable inferences in the prosecution's favor, there is a valid line of inferences that a rational factfinder could have drawn to answer this question in the affirmative. Just minutes before he and his cohorts launched the attack on Baker and Teasley, Nelson gave the knife to Bean so he would not be "empty handed." After Nelson heard Francis's story about seeing Baker at the convenience store and overhearing his conversation, Nelson, along with Francis, urged Bean to come with them and "go fight" Baker. Nelson was present when Francis specifically identified Baker, who was not wearing a shirt, as the person who had jumped him a few weeks previously. Nonetheless, Nelson participated in the attack on Teasley by kicking Teasley in the head while Bean (whom he knew had a knife) was repeatedly striking Teasley, who had been knocked to the ground and was unarmed and bleeding. It was not until after Francis and Nelson saw that he was bleeding that they backed off and Teasley managed to get away. Nelson and his cohorts then saw Teasley, who they knew was bleeding, collapse in the street. However, they walked past him and did not render aid or call the police.

In *Martinez*, 2009 WL 2244633, at *7, the district court was presented with a similar factual scenario and it rejected the petitioner's claim that the evidence was legally insufficient to sustain his conviction for assault as accessory. The testimony in *Martinez* showed that the petitioner and his codefendant were striking the victim simultaneously, and once the codefendant began hitting the victim in the head with a weapon, the petitioner did not stop his assault or try to stop his codefendant. Instead, he continued to kick the victim, leaving him prone and defenseless on the ground. The district court held that the "evidence was sufficient to allow a reasonable jury to infer that even if [the petitioner] did not deal the fatal blow" to the victim, "he 'solicit[ed], request[ed], command[ed], importune[d], or intentionally aid[ed]' [his codefendant] in causing the death of

14

[the victim]." *Id.* (citing N.Y. Penal Law § 20.00). Furthermore, in *Martinez*, the testimony established that the petitioner pulled his codefendant away and the two fled the scene together by car leaving the victim in the road. The district court concluded that the petitioner and his codefendant "fled together provides further evidence tending to corroborate a community of purpose." *Id.* (citing *People v. Skinner*, 269 A.D.2d 202, 203, 704 N.Y.S.2d 18 (1st Dept. 2000); *People v. Peralta*, 1 A.D.3d 115, 116, 767 N.Y.S.2d 70 (1st Dept. 2003)). The intermediate appellate courts in New York consistently have upheld convictions for accessorial liability on similar facts. *See*, *e.g.*, *People v. Baugh*, 956 N.Y.S.2d 313, 316 (3d Dept. 2012) (before the victim was injured, a verbal confrontation occurred outside the bar involving defendant and his friends and other individuals, including the victim; when a fight later erupted, witnesses identified defendant as being part of a group of individuals who were kicking the victim while he lay on the ground and was seriously injured; finding that this "established that defendant, at that moment, was part of the group that attacked the victim and shared a 'community of purpose' with them when the victim was seriously injured"); *People v. Francis*, 922 N.Y.S.2d 581, 584 (3d Dept. 2011) (finding that "[t]estimony that defendant approached Rivera along with his codefendants, all facing Rivera and his friends, and defendant—aware of the assault—stepped forward to join their attack by kicking Rivera persuasively established that defendant shared a community of purpose with them"); *People v. Edmonds*, 699 N.Y.S.2d 54, 55 (1st Dept. 1999) ("The People's evidence established that defendant was part of a group that advanced on the complainant in an unambiguously menacing manner, and that while some members of the group assaulted the complainant, others formed a wall, clearly intended to prevent his escape. This provided ample evidence of accessorial liability."); *People v. Hill*, 860 N.Y.S.2d 518, 520 (1st Dept. 2008) (finding that the verdict was based on legally sufficient evidence and was not against the weight of the

evidence, where evidence supported the inference that defendant intended to cause physical injury and actively participated in punching and kicking the victim, thereby intentionally aiding the other members of the group in inflicting physical injury, with the ultimate result being serious physical injury).

Under *Jackson*, a habeas petitioner "bears a 'very heavy burden' in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quotation omitted). Applying § 2254(d)(1) on top of the "already deferential," *Cavazos v. Smith*, 565 U.S. 1, 7 (2011), *Jackson* standard, I cannot conclude "that no reasonable court could have held that any reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt." *Garbutt v. Conway*, 668 F.3d 79, 81–82 (2d Cir. 2012). Furthermore, giving due deference to the Appellate Division's assessment of the evidence in light of its interpretation of a somewhat arcane body of state law, *see id.*, I cannot find that its decision resulted from an unreasonable determination of the facts in light of the proof presented at Nelson's trial. Since Nelson cannot satisfy either § 2254(d)(1) or § 2254(d)(2), he cannot obtain habeas relief on his legal insufficiency of the evidence claim.

**CONCLUSION**

For the reasons stated above, the petition (Dkt. # 1) is DISMISSED. Because Nelson has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
July 21, 2022.

17